## ATKINS vs. GUICE, AD'R.

A white man living in the Indian nation and owning property there, having undertaken to dispose of it by will, his right to make a will and the mode of making it, if its validity be contested, would be determined by the laws and usages of the Indian nation; but his executor having taken possession of his property and acted under the will, and having appeared in the Chancery Court of this State and submitted to be treated as executor or trustee under the will and account for the assets of the estate, without objecting to the jurisdiction of the court, it is proper that the court proceed to settle the rights of the parties under the will.

A testator made the following disposition of his property: "I bequeath unto R. C's orphans, being my brother's children: H. A's children, my sister: B. C's heirs, my brother: J. D. C's heirs, my brother: and to Solomon D. C., my brother without heirs: all of my brothers and sister's children to receive five hundred per family, first, and then my estate to be equally divided among all, taking Solomon D. C., my brother, as aforesaid, into said division, giving to each of my brothers and

sister having children five hundred dollars extra;" *Held*, That the children of the brothers and sister named, were to receive, by families, five hundred dollars, and that the residue of the estate was to be divided among them by families, and Solomon D. C.—the other brothers and sister taking nothing under the will.

It is irregular to render a decree in favor of persons entitled to the subject matter in 'litigation without making them parties to the bill.

The interest that disqualifies a witness must be some legal, certain and immediate interest, either in the event of the cause, or in the record as an instrument of evidence in favor of the witness in a subsequent suit—the security in an attachment bond has no such interest as will disqualify him as a witness for his principal, in a bill by the defendant to enjoin the attachment suit.

The provisions of the statute (*Dig., chap.* 55, *sec.* 18) requiring exhibits to be attached to the depositions of witnesses proving them, do not apply to a case where the exhibits are made a part of the bill or answer, and filed with it. It is sufficient if the witness refer to the exhibits by their marks and numbers as designated and identified by the answer, etc.

An executor residing in the Indian nation paid to the father, in money and in property, a legacy to which his children were entitled; *Held*, That he will be treated as having received it as a trustee in equity for their benefit, and that it would be just, perhaps, to consider the property received as belonging to them.

Where a legatee dies after the death of the testator, his administrator is entitled to collect the legacy, and not his distributees.

It is but just that the executor should pay interest on legacies remaining unpaid for two years after the assetts of the estate, consisting principally of cash, slaves and merchandize, which he had converted to his own use, had come to his hands.

*Appeal from Drew Circuit Court in Chancery.*

Hon. Theodoric F. Sorrells, Circuit Judge.

Harrison, for the appellant.

Glennon was clearly a competent witness, and his deposition was improperly excluded. His being security on the attachment bond in the suit at law created no interest in him in regard to this. 1 *Green. Ev. sec.* 386; 1 *Stark Ev.* 102; *Roscoe's Civ. Ev.* 81; 3 *Term R.* 27.

Could the decree is this cause be used either for or against the witness in a suit upon the attachment bond? or could an action be sustained on it after a hearing and decree in this suit.

" The interest must be a present, certain, vested interest, and

not uncertain or contingent." 1 *Stark. Ev.* 103; *Green. Ev.* sec. 390; *Stewart vs. Kip*, 5 *Johns.* 256; *Doug.* 134; 1 *Term R.* 163.

The whole of Logan's deposition should also have been read. The objection to the portions excluded could only have been to their irrelevancy.   But referring to the will, and other exhibits on file in the cause, and tending to prove issues in controversy, they were clearly relevant.

The fact that copies of the papers refered to were not incorporated in the deposition, could not destroy the relevancy or affect the validity of the testimony.   Copies could have served no other purpose than the identification of the originals, and as there were no other exhibits in the cause marked and numbered, like those mentioned in the deposition, they were perfectly identified.

The answer is directly responsive to the bill, and denies every ground of equity alleged, and contains no admissions inconsistent with such denial.   The admission in the answer in regard to the amount of the debts due the estate, is no evidence that Atkins collected, or could, by using proper diligence, have collected them, and there is no such allegation in the bill.   *Wheat et al. vs. Moss et al. use etc.*, 16 *Ark.* 251.

No interest should have been allowed, as there is no proof that Atkins ever refused to come to a settlement with any of the legatees, and was not at all times ready to pay them their legacies, if called upon.   *Fonb.* 595; *Eddowes vs. Hopkins, Doug.* 363; *Earl of Bradford*, 2 *Ves.* 587; 1 *Dallas*, 266, 267; *Hunn vs. Nortion*, 1 *Hopk.* 344; 3 *Hen. & Munf.* 603.

The heirs of Benjamin Chapman are not parties to the suit, nor is it shown in the decree or in the pleadings who they are; and it is a thing unheard of, to render a decree in favor of a person unknown, who is not a party to the suit, and not shown to have an interest in the subject matter of it.

Solomon D. Chapman's representatives ought to have been made parties.   *Sto. Eq. Plead.* secs. 44, 72 to 78; *Anthony & Brodie vs. Shannon*, 3 *Eng.* 52; *Brodie et al. vs. Shelton*, 6

*Eng.* 135; and this objection may be taken at the hearing. *Sto. Eq. Pl. sec.* 75.

Benjamin Chapman was not a legatee. The bequest was to his children, and not to himself. Such is the plain intent and meaning of the will, and no ingenuity of construction is required to arrive at that conclusion.

FOWLER & STILLWELL, also for the appellant, contended that the answer being responsive to the material allegations of the bill (if any such there were,) it devolved on complainant to disprove it: that there was no defence set up in complainant's bill that could not have been made at law; that the report of the master was erroneous in charging appellant with the property proved to belong to Hill, and in charging him with the accounts and notes due the estate, which were proved to be worthless: and that the decree in favor of the children of the complainant in a bill to which they were not parties, was erroneous.

YELL, for the appellees.

Atkins admits the will, and that he took the estate as executor, and that there was no law in the Indian nation to account to, or distribute said estate, and that he is ready to settle—he admits the jurisdiction, and the court established the will, and there being no other court in the world, where the parties can be held to account with each other, and the court of equity having obtained jurisdiction, will decree at least as to the amount of the account.

Those portions of Logan's deposition which referred to exhibits that were not attached to his deposition, were properly excluded.

The deposition of Glennon was properly excluded, on the ground of interest, he having signed the bond given in the attachment suit. If this case is decided for complainant, the injunction is made perpetual, and Glennon is liable for costs and damages upon the attachment bond. His interest is what the courts consider a direct interest.

The answer admits the material allegations of the bill, and is sufficient to charge the defendant, but not to relieve him—he must prove, by competent testimony, what he has done with the assets of the estate.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This is an appeal from the chancery side of the Circuit Court of Drew county.

The bill was filed by *Benjamin Chapman*, and alleged, in substance, that his brother, *Abner Chapman*, died in the Creek nation, in the year 1845, leaving an estate consisting of $5,200 in cash; goods, wares and merchandize of the value of $8,000; notes, accounts and liabilities amounting to $4,000; nine negroes, named *Charlotte, Sally, Amy, Martha and her two children, Ailsy and her child,* and a woman whose name was not recollected, worth $5,000; ten head of cows worth $50; a wagon and four oxen, worth $200; thirty or forty hogs, worth $150; and two horses, worth $150.

That after the death of *Abner Chapman* there came into the estate, by an indebtedness of John Hill, a negro woman named *Ailsy,* and her child, and a negro man named *Sam,* worth about $1,800; in cash $137 50; 700 bushels of corn, worth $350; two yoke of oxen, worth $100; and one wagon, worth $100.

That *Abner Chapman* made a will, the provisions of which the complainant attempts to state and construe, alleging the will to be in the possession of *Catlet J. Atkins,* the executor, who is made defendant. The will was made an exhibit to the answer of *Atkins,* and is as follows:

CREEK NATION, ⎰
      CANADIAN. ⎱

I, Abner Chapman, living in said nation, in the year of our Lord, one thousand eight hundred and forty-five, taking into consideration the uncertainty of life; being at an advanced age, and infirm in health, do this day conclude and decide to make my will, last and testamentary. In the name of God! Amen. Maturely deliberating, in my proper mind and senses, do this

day, the 31st of August, and the year above stated, make the following distribution of my property, *to-wit:* I bequeath unto Robert Chapman's *orphans*—being my brother's children; Henrietta Atkins' *children*—my sister; Benjamin Chapman's *heirs*—my brother; John D. Chapman's *heirs*, my brother; and to Solomon D. Chapman, my brother, *without heirs; all of my brothers and sister's children* to receive five hundred dollars per family, first, and then my estate to be equally divided among all; taking Solomon D. Chapman, my brother, as aforesaid, into said division; giving to each of my brothers and sisters, having children, five hundred dollars extra. And considering, further, of a promise made my negroes, when purchasing them, that I would not carry them from their native country, request my executor, hereafter named, in the event of my death, to suffer them to choose their masters, within their own country, and to be so disposed of.

And in order to have my will fully carried into effect, after my death, I appoint Catlet J. Atkins, my brother-in-law, my sole executor, with the assistance of John Hill, my present clerk, which will assist in settling my unsettled affairs, after death, and for him to receive, in addition to his present salary, five hundred dollars (five hundred extra) per year, until my affairs are entirely settled to the satisfaction of my legatees.

In witness whereof, I Abner Chapman, in my proper mind, as aforesaid, hereunto assign my name, and make my seal in presence, this day and date before written.

ABNER CHAPMAN, [Seal.]

Before us this 30th August, 1845, Abner Chapman, the assignee of the within will, agreed to and subscribed his name and made his seal.

JNO. H. BRODNAX,<br/>JAS. L. ALEXANDER,<br/>JOHN PHIPPS.

The bill further alleges that *Robert Chapman*, who died before.

the death of the testator, left seven children, his heirs, *Micajah*, *Cena*, *Abner*, *Mary*, and three others, whose names were not known, all of whom resided in Georgia.

That *Henrietta Atkins*, named in the will, was the sister of the testator, and wife to Catlet J. Atkins.

That *John D. Chapman* died in the year 1843, leaving a widow, *Martha*, and three children, *Benjamin D.*, *Cincinnatus*, and *John D.*, who resided in Alabama.

That Solomon D. Chapman died in 1852, without children, leaving a widow, Caroline H., who also resided in Alabama.

All of whom were made defendants.

That *Abner Chapman* was not in debt when he died, and that Atkins took possession of his entire estate, without probate of the will or letters testamentary, there being no court in the *Creek nation* to grant the same, and converted the estate to his own use and benefit; except $2,500, which he paid to complainant (*Benjamin Chapman*) as part of his legacy; $250, paid by him to the heirs of *Robert Chapman*, and $150, to *Solomon D. Chapman*.

Complainant alleges, upon his estimate of the value of the estate, and upon his construction of the will, that he was entitled to have received a legacy of about $4,500; his sister, *Mrs. Atkins*, a like amount; the heirs of *Robert Chapman* and *John D. Chapman*, each (*per stirpes*) the same amount, and Solomon D. Chapman within $500 of that sum.

That in December, 1849, complainant visited *Atkins*, at his residence in the Creek nation, and obtained from him $250, for which he gave him his note, bearing date the 12th of said month. That, at the same time, *Atkins*, taking advantage of complainant, who could neither read nor write, fraudulently obtained from him a note for $1,024, representing it to be a refunding bond, etc.

That, notwithstanding both of said notes were obtained from complainant by fraud, *Atkins* had instituted a suit, by attachment, against him, upon the notes, in the Circuit Court of Drew

county, caused his slaves and other property to be attached, and that the suit was still pending and undetermined.

The bill prays that Atkins be perpetually enjoined from collecting the notes, that he account for the assets of Abner Chapman's estate, and that the amount due from him, with interest, be distributed among the parties in accordance with the provisions of the will.

*Atkins* answered, making no objection to the jurisdiction of the court, and stating an account of the assets which came to his hands, with schedules, etc., showing what disposition he had made of the same, etc.

Publication was made as to the other defendants, some of whom answered, admitting the truth of the allegations of the bill, and offering to submit to such decree as the court might make in the matter.

On the hearing, the court decreed that the will be established, and referred the case to a master to state an account of the assets, etc., and, on the coming in of the master's report, rendered a final decree, perpetually enjoining the suit at law upon the notes, and distributing the amount found to be in *Atkins'* hands by the master, among the legatees, etc. Atkins appealed from the decree.

Pending the proceedings in the court below, the complainant died, and the suit was revived in the name of *Guice*, his adminstrator.

It appears that *Abner Chapman* was a white man, and a trader in the Creek nation, where he resided at the time of his death, and for a number of years before, and that he left an estate at the place of his domicil, composed of negroes, merchandize, other personal property, choses in action, etc.; which he had undertaken to dispose of by will, and which came into the hands of *Atkins*, who was named in the will as executor.

If the validity of the will had been contested, the right of *Chapman* to make a will, and the mode of making it, would have been determined, we suppose, by the laws and usages of

the Creek nation, where he was domiciled, and where his property was. *Story Com. L. Ch. XI; 1 Lomax Ex.* 114.

But *Atkins* took possession of the property and acted under the will, and neither he nor any of the parties interested have contested its validity. Nor did he, by answer or otherwise, object to the jurisdiction of the court below, but submitted to be treated as executor, or trustee, under the will, and to account for the estate which came into his hands as such.

1. It is first to be determined, upon a construction of the will, to whom the testator intended to bequeath his property.

It is manifest, we think, from the language employed in the will, that it was the intention of the testator to bequeath five hundred dollars to the children, by families, of each of his three brothers, and his sister, who had children; and then to divide the residue of the estate equally among his brother Solomon D., who was without children, and the children, by families, of the other brothers and sister. And that the testator did not intend to give any part of his estate to his brother *Benjamin*, the complainant, or to his sister, *Mrs. Atkins*.

Such, too, was the construction placed upon the will by the court below, as shown by the decree; for though upon the death of the complainant, the case was revived in the name of his administrator, yet the decree was rendered in favor of his *heirs*, as legatees under the will. But his heirs were not parties to the suit, and it was irregular to render a decree in their favor without making them parties. So the decree treated the children of Mrs. Atkins as legatees, and declared that their father, the appellant, should be permitted to hold in his hands that portion of the estate which was going to them. They also should have been made parties, but were not.

The counsel of the parties here, on both sides, concede that the above construction of the will is correct.

The solicitor who prepared the bill, had not the will before him at the time, and drafted the bill, no doubt, upon his client's representations as to its contents. Having fallen into an error,

he attempted to remedy it by the decree, instead of amending the pleadings, and making the proper parties.

2. On the hearing *Atkins* offered to read in evidence the depositions of *James C. Glennon* and *James Logan*, which appear to have been regularly taken, filed and published in the cause; but the court excluded the deposition of *Glennon*, and portions of the deposition of *Logan*.

Glennon's deposition was excluded on the ground that he was the security of Atkins in the attachment bond, filed by him in the attachment suit against the complainant, which the bill sought to enjoin.

The exclusion of this deposition was an error. The witness was not a party to this suit, nor had he any disqualifying interest in its result. The disqualifying interest must be some legal, certain and immediate interest, however minute, either in the event of the cause itself, or in the record, as an instrument of evidence in support of the claims of the witness, in a subsequent suit. It must be a legal interest, as distinguished from prejudice or bias, etc. 1 *Greenlf. Ev.* 493.

The attachment bond was conditioned, we suppose, in accordance with the statute, that the plaintiff in the action would prove his debt on demand, on a trial at law, or that he would pay such damages as might be adjudged against him.

The filing of the bill for injunction, by the defendant in the attachment suit, was a concession that he had no adequate defence at law. If he succeeds in making the injunction perpetual, there can be no trial at law, and no breach of the condition of the bond by a failure in the action. If the injunction is dissolved, and the plaintiff in the attachment suit allowed to proceed with the action, there may be a failure to prove the debt, etc., and a breach of the condition of the bond, and the witness might, in that event, become liable as security on the bond. But his deposition conduces to defeat the relief prayed by the bill for injunction, and to produce the event on which his liability depends. Hence, he testified against his interest. If an action were brought on the bond on the ground that the

attachment was sued out upon a false affidavit, (*See Taylor vs. Ricards et al.* 4 *Eng.* 383,) it is not perceived that the decree in this case, whatever it may be, could be used by the witness as available evidence in his defence.

The portions of *Logan's* deposition which were excluded, relate to certain papers which were made exhibits to the answer of *Atkins*, and filed in the cause.

The ground upon which these portions of the deposition were excluded by the court, does not appear in the record. If because the papers referred to were not sufficiently identified by the witness, we think the court erred. The witness refers to the exhibits by their marks and numbers as designated and identified by the answer. And if he left any doubt as to their identity, it was removed by the affidavit of the solicitor of the appellant, offered in connection with the deposition, that the exhibits were present and shown to the witness when he testified. It appears that the exhibits themselves were read upon the hearing without objection.

The provision of the statute (*Dig. chap.* 55, *sec.* 18,) requiring exhibits to be attached to the deposition, etc., was only intended for greater certainty and security in proving them, and does not apply to a case where the exhibits are made a part of the bill, or answer, and filed with it.

The design and object of the law are answered, if the exhibits are shown to the witness and identified. *Nick's heirs et al. vs. Rector,* 4 *Ark.* 276.

3. In the answer of appellant, he states the appraised value of the entire estate admitted by him to have come into his hands, deducts the amount of payments upon demands against the estate, expenses, etc., losses from bad debts, etc., alleges that the true balance to be distributed among the legatees was $5683 91, and states how it was distributed, which of them had been paid, etc.

The master appointed by the court below to state an account, etc., proceeding upon the same plan, makes the amount for distribution among the legatees $12,708 60.

Finding a number of errors in the account, as stated in the answer, as well as in the report of the master, we have referred the matter to the clerk of this court, as master, to take and state an account correctly upon the pleadings and evidence, treating the deposition of Glennon and the whole of Logan's deposition as competent evidence. From his report it appears that the gross amount of the estate with which appellant was chargeable, is $19,960 76, and the total amount with which he is entitled to be credited for accounts, notes, etc., not collected, demands and expenses paid, commissions, etc., is $12,099 86, leaving a balance distributable $7,860 90.

In this estimate appellant is charged with a list of accounts for 1844-5, amounting to $1521 01, with which he failed to charge himself in the statement exhibited with his answer, as did the master of the court below. This is the only error of much importance on the debit side of the account exhibited with the answer.

The answer, in response to allegations of the bill, positively denies that any other assets than such as are included in schedules exhibited, came to the hands of appellant. Upon the uncorroborated testimony of one witness (Rogers,) the master of the court below erroneously charged the appellant with $1,000, as the value of a house and lot, etc., of the testator, and with a note for $2,000 on John Hill.

The answer, in response to the allegations and interrogatories of the bill as to the available debts due to the estate, states the amount of the accounts, notes, bills, etc., which came into the hands of the appellant as assets, exhibiting a shedule, and also exhibits a list of the claims which he was unable to collect, amounting to $7,161 94. He states that these claims were upon Indians, who refused to pay them, and that there was no law in the Creek nation by which he could enforce their payment. The deposition of Logan sustains the answer as to the inability of the appellant to collect the list of claims exhibited as worthless, and he is not contradicted by the other witnesses.

The master of the court below allowed the appellant a credit for but one-third of the amount of these claims.

In the account made out by the master of this court, the appellant is credited with the entire amount of the claims alleged by him to have been uncollectable.

These are the prominent and more important errors committed by the master below, in arriving at the amount to be distributed among the legatees, which we have caused to be corrected.

4th. The mode in which the balance, in the hands of the appellant, should be distributed, and the payments made by him to the legatees, are next to be considered.

To the $7,860 90 stated above to be the balance distributable, must be added $365 09, paid by appellant out of the assets of the estate, to John Hill, on account of Solomon D. Chapman, and with which appellant is credited as for so much paid upon the demand of Hill against the estate, and which will be more fully explained below. This makes the amount to be distributed $8,225 90, and which is distributable among the legatees as follows:

| | | |
|---|---|---|
| To Benj. Chapman's children | $1,745 19 | 4-5 |
| To John D. Chapman's heirs | 1,745 19 | 4-5 |
| To Robert Chapman's heirs | 1,745 19 | 4-5 |
| To Henrietta Atkin's children | 1,745 19 | 4-5 |
| To Solomon D. Chapman. ($500 less) | 1,245 19 | 4-5 |

$8,225 90

BENJ. CHAPMAN'S CHILDREN.—It appears that on the 2d of January, 1846, appellant paid to Ben. Chapman, (who claimed the legacy left to his children,) $1,250; on the 12th of March following, he paid him the further sum of $1,250, and took from him a refunding receipt; and on the 26th of the same month, he paid him $70 in merchandize, making the aggregate sum of $2,570.

Appellant states in his answer, that these sums were paid shortly after the estate came into his possession, upon an over-

estimate of its value, and when he did not anticipate so great a loss on account of uncollectable debts as afterwards occurred.

It seems from the testimony of *Rogers,* that the payment of the 12th March, 1846, was not made in money, but in slaves belonging to the estate, (Charlotte and her two children, Sally and Amy.) And in order to comply in form with the provision of the will that the slaves should be sold in the Creek Nation, by an agreement between the parties, the three slaves were transferred, by bill of sale, from appellant to one *Pain,* a resident of the Nation, and by him to the *wife* and children of *Benjamin Chapman.*

It also appears that a final settlement was made between appellant and Benj. Chapman, on the 20th of December, 1849, in relation to the estate, legacy, etc.; that appellant represented to Benjamin that he had been overpaid, exhibiting to him a statement, with schedules, etc., of the assets etc., of the estate; that the amount due to him was but $1,545 97, and that he having received $2,570, was overpaid $1,024; for which latter sum Benjamin executed to appellant his note, which is one of the notes upon which the attachment suit sought to be enjoined in this case was brought by appellant.

The allegations of the bill that this note was obtained from complainant on false representations as to the character of the instrument, are positively denied by the answer of appellant, and are not sustained by any evidence.

The only misrepresentation which appears to have been made by appellant, in the settlement, was as to the true balance of assets in his hands, subject to distribution among the legatees, and as to the amount really due to complainant's *children.*

It appears, also, that after this final settlement was completed, complainant borrowed of appellant $250, for which he gave him his note, with his (complainant's) son, John D., as security, and upon which complainant paid witness, Glennon, for appellant, $110, on the 13th of May, 1852, as he testified. This is the other note upon which the attachment suit was brought. It has no connection with the estate, or legacy due

to complainant's children, and as to it the injunction must be dissolved and appellant permitted to proceed with his action at law.

Benjamin Chapman's children being entitled to but $1,745 19 4-5, and he having received $2,570, the appellant paid over to him $824 80 1-5 more than his children were entitled to.

He having received $2,570 out of the assets of the estate, without any legal right to it, but which belonged to his children, and the other legatees, he must be treated as having received it as a trustee in equity for their benefit.

It would be just, perhaps, to treat the three slaves, which Benjamin Chapman obtained of the appellant, at $1,250, and caused to be conveyed to his *wife* and children, as belonging to his children, and as a payment to them of so much of their legacy; and they should be subrogated to the right of appellant to recover of their father's estate $495 19 4-5, the balance due them upon their legacy; and the other legatees, to whom appellant is indebted, should be subrogated to his right to recover of Benjamin Chapman's estate $824 80 1-5, being amount overpaid him on legacy due his children, with interest from the time he received it.

JOHN D. CHAPMAN's HEIRS—did not answer the bill or appear.

The appellant avers, in his answer, that the legacy devised to them was paid, and overpaid as follows: That they were indebted to John D. Hill, at the time of the death of the testator, for merchandise furnished them by Hill, at his instance, in a sum exceeding the amount of their legacy, which appellant was compelled to pay out of the estate. There is no proof of the truth of this allegation other than what appears on the face of the account rendered by Hill against the estate, and which, it is in proof, appellant was compelled to pay in order to get the property of testator out of the possession of Hill. In the account there is a charge for " *goods furnished Mrs. Black, in Wetumpka at the request of testator, as per schedule rendered*, $1,465 23." But there is no evidence in the record before us that *Mrs. Black* was one of the heirs of John D. Chapman.

The bill states that he left three children, named Benjamin D., Cincinnatus, and John D., and a widow named Martha.

The testator is also charged in the account of Hill, with an item of $147 25, on account of Cincinnatus Chapman, and an item of $579 15, on account of B. D. Chapman, as per accounts rendered.

In the absence of other evidence, we cannot regard these items as payments upon the legacy due to them. Though for want of a legal remedy, in the Indian country, appellant may have been compelled to pay Hill's account, in order to obtain possession of property belonging to the testator, and was consequently entitled to a credit for the amount so paid, as upon a demand against the estate, yet there is no proof in the record before us that the heirs of John D. Chapman, or either of them, had obtained merchandise, or any thing else, from Hill, at the instance of the testator, or otherwise, as charged in the account.

If it had been satisfactorily proven, as alleged, that appellant, in paying Hill's account as a demand against the testator, thereby legally discharged the claim of John D. Chapman's heirs upon him for the legacy beqeathed to them, the $1,745 194-5 stated above to be distributable to them, would, nevertheless, have to be paid by appellant, and distributed among the other legatees, because he paid Hill's account out of the assets of the estate, and in ascertaining the distributable balance in his hands the master of this court has credited him with the entire amount of the account as a demand against the estate paid by him.

*Robert Chapman's heirs*—answered the bill, admitting that appellant had paid on the legacy due to them $220, and no more. No additional payment to them is alleged by appellant, or proven. Balance due to them $1,525 194-5.

*Solomon D. Chapman*—having died in 1852, some years after the death of the testator, his administrator was, by law, entitled to collect any portion of the legacy that remained due to him, to be appropriated for the benefit of his creditors, or distributed to his heirs at law; and his administrator should have been made a party. (*See Lemon's Heirs vs. Rector et al.* 15 *Ark.* 437;

*Pryor vs. Ryburn,* 16 *ib.* 671; *Anthony vs. Peay et al. ib.* 24. His widow was made a defendant to the bill, and answered, offering to submit to such decree as the court might deem just to make. She did not claim dower in the legacy, nor did the court decree her any.

The bill alleges that appellant had paid Solomon D. Chapman but $150.

The answer of appellant states that he was indebted to John Hill, at the time of the death of the testator, for merchandise furnished him at the instance of the testator, and which the appellant had to pay out of the estate. The amount is not stated. In the account rendered by Hill, against the estate, and which the appellant paid, and is credited with, as above shown, is an item dated March, 1841, for "*goods furnished Solomon D. Chapman, by request of testator, as per schedule, giving all just credits,* $965 09."

*Rogers* testified, that in 1846, he was employed by Solomon D. to take from Alabama to Benjamin Chapman, in the Creek nation, a power of attorney authorizing him to settle with appellant as "*administrator,*" of Abner Chapman for Solomon D. That witness accordingly delivered the power of attorney to Benjamin, who made a settlement with appellant for Solomon D., after appellant had paid Hill's account. against the estate. That $600 of the amount which appellant had paid to Hill on Solomon D.'s account, had been previously paid by Solomon D., and witness protested against his being charged with that amount in the settlement, but it was done. That appellant then estimated the shares that would be going to the other legatees at about $2,500 for each family, and settled with Benjamin, as agent for Solomon D., on such estimate. That appellant made an estimate of what Solomon D., was entitled to under the will, deducted therefrom the amount which he stated that Solomon D. had previously received, which left a balance in his favor of $884 91, for which sum appellant executed his note payable to Solomon D. or bearer, and promised to pay it out of the first money he collected for the estate.

Witness stated that this note was in his possession at the time he gave his deposition in the case, that nothing had been paid upon it, and that he had brought suit upon the note in the Drew Circuit Court. Whether this settlement was ever approved by Solomon D. does not appear. Nor does the witness state how he happened to bring suit on the note, or for whose benefit. There is no proof that Solomon D. ever repudiated the settlement.

The court below distributed the entire balance of assets found to be in the hands of appellant by the master, among the heirs of Benjamin Chapman, the heirs of Robert Chapman, the heirs of John D. Chapman, and the children of Mrs. Atkins, leaving nothing in appellant's hands to meet the note executed to Solomon D. by him, and thus standing out, and giving him no credit therefor, as a payment to Solomon D. upon his legacy, which was an error in the decree.

It is to be inferred from the testimony of Rogers that $365 09 of the charge of $965 09, embraced in Hill's account against the estate, and paid by appellant, was properly charged to Solomon D. in the settlement, which, added to the amount of the note for $884 91, makes the sum of $1,250, which, upon the facts now appearing in the case, must be regarded as having been paid to Solomon D. upon his legacy, and which, without the $600, which Rogers states was wrongfully charged to him in the settlement, exceeds the amount distributable to him as above stated.

The $365 09 having been paid by appellant out of the assets of the estate, and credited to him as part of the amount paid by him to Hill, it has been added to the balance to be distributed among all of the legatees, including Solomon D., as above stated.

5. The effects of the testator came into the hands of appellant about the first of the year 1846. He received $5,116 54 in cash; a number of slaves, which must have yielded to him some hire or labor from the time he took possession of them;

and a stock of goods, which he converted to his own use, charging himself with the value put upon them by appraisers selected, perhaps, by himself. Logan, however, testifies that it was the best disposition, for the benefit of the estate, which appellant could have made of the goods in the Indian country, owing to the difficulty of making collections upon sales to the Indians, etc. The value of the slaves, goods, and cash on hand, constitutes the principal portion of the assets of the estate with which the appellant is charged; and upon all of the facts of the case, we think it but just that he should be charged with interest upon the unpaid legacies from the 1st of January, 1848.

For the errors above indicated, the decree of the court below must be reversed, but for the want of proper parties such final decree cannot be rendered here as should have been rendered below. The cause must be remanded, with instructions to the court to dissolve the injunction, and permit the appellant to proceed with the action at law as to the note for $250; and that, upon the proper parties being brought before the court, a final decree be rendered as indicated in this opinion, etc.

Absent, Mr. Justice Rector.